UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NUTRAMAX LABORATORIES, INC.
and NUTRAMAX LABORATORIES
VETERINARY SCIENCES, INC.,

    Plaintiffs,

v.                                          Case No. 8:22-cv-1691-TPB-MRM

LINTBELLS INC. and
LINTBELLS LTD.,

    Defendants.
_____/

## ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on the motion to dismiss filed by Defendants Lintbells Inc. and Lintbells Ltd. on October 6, 2022. (Doc. 33). On November 10, 2022, Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. filed a response in opposition. (Doc. 39). After reviewing the motion, response, court file, and record, the Court finds as follows:

### Background

The parties are direct competitors that research, develop, and sell health supplements benefitting animals. Plaintiff Nutramax Laboratories, Inc. ("Nutramax Labs") is the owner of the Dasuquin® trademark, which it licenses to its subsidiary, Plaintiff Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet"). For ease, the Court will refer to Nutramax Labs and Nutramax Vet collectively as "Nutramax." Since 1992, Nutramax – on its own and through

licensed affiliates and resellers – has sold its animal health supplement products across the United States through a portfolio of brands, including but not limited to its Cosequin® and Dasuquin® products lines of joint health supplements for dogs and cats.

Defendants Lintbells Inc. and Lintbells Ltd. are direct competitors with Nutramax in the animal supplement business. Defendants allegedly manufacture and market animal supplement products under their YuMOVE brand, including the YuMOVE Tasty Bites, YuMOVE Advance 360, and YuMOVE Soft Chews products. Nutramax claims – upon information and belief – that Defendants are jointly responsible for the development, production, marketing, and sale of the products, as well as the activities alleged to be unlawful in the complaint.

In the three-count complaint, Nutramax contends that Defendants have made false, deceptive, and/or misleading claims about Defendants' own products. Specifically, Nutramax has asserted claims for: false or misleading advertising under 15 U.S.C. § 1125 (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II), and misleading advertising under Florida law (Count III). Defendant Lintbells Ltd. has moved to dismiss for lack of personal jurisdiction, and both Defendants (Lintbells Ltd. and Lintbells Inc.) have moved to dismiss for failure to state a claim.

## Legal Standard

*Personal Jurisdiction*

A defendant may file a motion to dismiss for lack of personal jurisdiction in its first Rule 12 response. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff must establish a

prima facie case for personal jurisdiction over the defendant. *Performance Indus. Mfg., Inc. v. Vortex Performance Pty. Ltd.*, Case No. 8:18-cv-00510-T-02AAS, 2019 WL 78840, at *2 (M.D. Fla. Jan. 2, 2019). Once a defendant challenges personal jurisdiction via affidavit, the plaintiff must rebut the evidence. *See Volt, LLC v. Volt Lightning Grp., LLC*, 369 F. Supp. 3d 1241, 1246 (M.D. Fla. 2019); *see also Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). Doubts as to whether a prima facie case for personal jurisdiction has been made are construed in favor of the defendant and unrefuted allegations in the defendant's affidavit are presumed to be true. *3Lions Publishing, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019); *Performance Indus.*, 2019 WL 78840, at *2.

*Failure to State a Claim*

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the

[c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 41 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Personal Jurisdiction*

Lintbells Ltd. moves to dismiss for lack of personal jurisdiction, presenting a facial rather than factual challenge to specific jurisdiction.[1] Nutramax asserts that the Court has personal jurisdiction over Lintbells Ltd. because (1) it has purposefully availed itself of the benefits of doing business in Florida by advertising, promoting, offering for sale and/or selling products to consumers in Florida, or (2) Lintbells Ltd. has committed tortious acts within Florida and have caused Nutramax injury in Florida. (Doc. 39 at 17).

When analyzing personal jurisdiction, the Court must determine: (1) whether personal jurisdiction over the defendant exists under the forum's long-arm statute; and (2) whether exercising personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

---

[1] The parties appear to agree that Lintbells Ltd. is not subject to general jurisdiction, so the Court does not further address this issue.

Here, the allegations that Lintbells Ltd. has committed tortious acts within Florida are either speculative, conclusory, or both. In the complaint, Nutramax alleges – *upon information and belief* – that Lintbells Ltd. "advertises, promotes, offers for sale, and sells its YuMOVE animal supplement products to consumers throughout the United States, including in this District." (Doc. 1 at ¶ 10); *see also* (Doc. 1 at ¶ 22). Nutramax also alleges – *upon information and belief* – that Defendants are "jointly responsible for the development, production, marketing, and sale" of these products. (Doc. 1. at ¶ 23). In this context, the Court declines to accept as true allegations made upon information and belief. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013); *Oueiss v. Saud*, No. 1:20-cv-25022-KMM, 2022 WL 1311114, at *14 (S.D. Fla. Mar. 29, 2022); *Covenant Imaging LLC v. Viking Rigging & Logistics, Inc.*, No. 1:19-cv-23329-UU, 2020 WL 12442002, at *5 (S.D. Fla. Feb. 24, 2020). The remaining allegations of the complaint lump both Defendants together, but this is insufficient to establish personal jurisdiction. *See id*. at *6 (finding the plaintiff's attempt to lump all defendants' actions together by claiming they acted in concert insufficient to establish specific jurisdiction, which requires the court to evaluate each defendant's contacts with the forum state individually).

To the extent Nutramax relies on the corporate relationship between the parties, it has failed to make a prima facie case of personal jurisdiction. Nutramax has not shown that Lintbells Inc. – the domestic subsidiary – is an alter ego of Lintbells Ltd. or establish any facts that would justify piercing the corporate veil. *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292-93 (11th Cir. 2022). Nothing in the

record establishes that Lintbells Ltd. played any role in the American distribution or marketing of the animal supplements. The Court cannot simply attribute Lintbells Inc.'s distribution and marketing efforts to its foreign parent. *Id*.

Accordingly, the complaint is dismissed as to Lintbells Ltd. due to lack of personal jurisdiction, with leave to amend to cure the jurisdictional deficiencies identified here. To the extent that Nutramax seeks to conduct jurisdictional discovery, its request – embedded in a response in opposition to a motion – is procedurally improper and must be denied. *See, e.g.*, *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009)).

*Failure to State a Claim*

Pleading Standard

In the motion to dismiss, Defendants contend that the complaint is deficient because it does not meet the particularity requirements of Rule 9(b), which requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "However, authorities disagree as to whether this heightened pleading standard applies to claims brought under the Lanham Act." *Advisors Excel, L.L.C. v. Scranton*, No. 14-60558-CIV-MIDDLEBROOKS, 2014 WL 12543802, at *3 (S.D. Fla. Sept. 15, 2014); *see also Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1227 (M.D. Fla. 2017). Courts "similarly disagree as to whether 9(b) applies to state deceptive trade practices acts, including FDUTPA." *Id.*; *see also Wave Length Hair Salons v. CBL & Assocs. Props.*, No. 2:16-cv-00206, 2017 WL 10604140, at *10 (M.D. Fla. Apr.

11, 2017) (collecting cases); *Advisors Excel, L.L.C.*, 2014 WL 12543802, at *3 (S.D. Fla. Sept. 15, 2014). Because Nutramax has made no allegations of fraud, the Court will analyze the claims under Rule 8(a) rather than the heightened pleading standards of Rule 9(b). *See id.*

Lanham Act and State Law Claims[2]

Under section 43(a) of the Lanham Act, a party may sue a competitor who, in connection with the sale of goods, "uses in commerce any … false or misleading description [or representation] of fact, … which … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities," and "is likely to cause [consumer] confusion." 15 U.S.C. § 1125(a). Such a competitor "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." *Id.*

"It is well established that only factual statements are actionable under the Lanham Act." *Advisors Excel, L.L.C.*, 2014 WL 12543802, at *4 (citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1311 (11th Cir. 2010)). On the other hand, opinions "are only actionable if they imply a false factual basis for the opinion." *Id.* (citing *MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, No. 11-24110-CIV, 2013 WL 3288039, at *15 (S.D. Fla. June 28, 2013)). Opinions come in many forms, but "to be actionable, a statement must give consumers the impression that it describes actual

---

[2] Nutramax's Lanham Act, FDUPTA, and state law misleading advertising claims may be analyzed under the same legal framework. *See Suntree Technologies, Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012).

facts about the plaintiff or the activities in which plaintiff participated." *Id.* (citing *MPS Entm't, LLC*, 2013 WL 3288039, at *15).

Nutramax alleges that several claims made by Defendants about Defendants' products are false, deceptive, or misleading.

### The Natural Claims

Nutramax asserts that Defendants have made claims that their products are "natural" although they may include artificial or synthetic ingredients. Specifically, Nutramax identifies the following statements:

> The YuMOVE Tasty Bites and YuMOVE Daily Soft Chews products claim that each product is a "Natural Joint Health Supplement" although the disclaimer states that only "over 90% of ingredients" in each product are natural, meaning over 9% of the ingredients in each product could be artificial or synthetic. (Doc. 1 at ¶¶ 24-25).

> On the YuMOVE website, Defendants claim without qualification or disclaimer that many of its products are made with natural ingredients, and that the YuMOVE Daily Soft Chews product is a "natural joint supplement in a tasty, soft chew." (*Id.* at ¶ 26).

Nutramax alleges that the reasonable consumer would expect products labeled as "natural" to be composed entirely of natural ingredients, and not contain any synthetic or artificial ingredients.

Representations that the products are "natural" or made with natural ingredients may not be clearly misleading – certainly, some ingredients are natural. Perhaps a reasonable consumer would not expect that a product labeled as "natural" or "made with natural ingredients" to include *only* natural ingredients. However, "'[w]hat matters most is how real consumers understand and react to the advertising," and the allegations that consumers were misled by the labels passes

the plausibility threshold. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021). The allegations here are sufficient to state a claim, and at this stage of the proceedings, the Court is declines to address the merits of Nutramax's claims. The motion to dismiss is denied as to this ground.

### The Clinical Study Claims

Nutramax asserts that Defendants have made claims that their YuMOVE Advance 360 product is "the only joint supplement backed by two canine clinical studies." (Doc. 1 at ¶ 35). This is false, according to Nutramax, because its own Cosequin® joint supplement product is backed by at least three canine clinical studies. Again, the Court declines to address the merits of Nutramax's claims at the motion to dismiss stage. The allegations pass the plausibility threshold, so the motion to dismiss is denied as to this ground.

### The "Made in the USA" Claims

Nutramax alleges that Defendants have made claims that their products are "Made in the USA," but that the YuMOVE supplement products contain as a primary ingredient ActivEase® Green Lipped Mussels from New Zealand. (Doc. 1 at 39). Nutramax also contends – upon information and belief – that many other ingredients in the YuMOVE supplements are sourced from outside of the United States. (*Id*.) Nutramax points out that on the bottles for several YuMOVE branded products, there is a prominent American flag, followed by a small disclaimer that the supplements are "Made in the USA with globally sourced ingredients." (*Id*. at ¶ 42).

This statement is a closer call, but the Court will allow the claim to proceed for now. It is plausible that the "Made in the USA" statement conveyed a false impression to a reasonable consumer, and the Court certainly cannot make any findings on this record as to whether the products meet the requirements of the label "Made in the USA" or contain an appropriate disclaimer. *See, e.g., BenShot, LLC v. 2 Monkey Trading LLC*, No. 18-C-1716, 2022 WL 1275604, at *2-6 (E.D. Wisc. Apr. 28, 2022) (denying summary judgment on "Made in the USA" claim). The allegations are sufficient, and the motion to dismiss is denied as to this ground.

### The Hyaluronic Acid Claims

Nutramax asserts that Defendants have made claims that their YuMOVE products (except the YuMOVE Young Dog Joint Supplements) are "the only joint supplement range with Hyaluronic Acid proven to reach the joint within 2 hours[,]" although Defendants' products have not been specifically tested and proven. Nutramax additionally contends the statement is false because at least one other joint supplement product on the market contains the same HyaMax hyaluronate that was tested in the study cited by Defendants – that is, Nutramax's own Cosequin® Maximum Strength Plus MSM & HA Chewable Tablets. The Court declines to address the merits of Nutramax's claims at the motion to dismiss stage. The allegations pass the plausibility threshold, so the motion to dismiss is denied as to this ground.

### The Glucosamine and Quality Claims

Nutramax asserts that Defendants claim that Defendants' YuMOVE Advance 360 soft chews contain Glucosamine to support joint structure, and that the product

labeling indicates the product contains 750mg of Glucosamine per soft chew. However, Nutramax alleges that it engaged a third-party testing laboratory to analyze a sample of the YuMOVE Advance 360 for Large Dogs product, which revealed that the products contained only 425 mg of Glucosamine rather than the amount claimed on the product label. As to this claim, the Court declines to address the merits at this stage of the proceedings. The allegations pass the plausibility threshold, so the motion to dismiss is denied as to this ground.

Nutramax also alleges that Defendants tout themselves as being a member of the National Animal Supplement Council ("NASC") and place the NASC "Quality Seal" certification mark on the product bottles and in advertisements for the YuMOVE Advance 360 for Large Dogs product. Nutramax claims that "irrespective of what standards the NASC sets for use of its Quality Seal, and irrespective of whether Defendants' YuMOVE Advance 360 for Large Dogs product does in fact meet those standards, Defendants' use of the NASC Quality Seal on the packaging and in marketing falsely communicates to consumers that they are purchasing products of high, and highly consistent, quality, when in fact they are not."

Nutramax appears to take issue with a "Quality Seal" provided by the National Animal Supplement Council, which is not a party to this action. Nutramax does not suggest that an entity or organization cannot develop its own product standards or that Defendants are improperly using the designation. Although Nutramax speculates that consumers are confused about the quality of Defendants' products due to use of the seal, this is not enough to state a Lanham Act false or misleading advertising claim. *See, e.g., N. Am. Olive Oil Ass'n v.*

*D'Avolio Inc.*, 457 F. Supp. 3d 207, 225-26 (E.D.N.Y. Apr. 30, 2020). The motion to dismiss is granted as to the "Quality Seal" claim, with leave to amend.

### The New Standard Claim

Nutramax alleges that on Defendants' website, Defendants claim that there is a "new standard" for joint supplement, and that only the YuMOVE products meet this standard due to certain characteristics. Nutramax contends that the "new standard" claim falsely states or implies that there is a new standard of supplements when in fact there is no such standard, and that the product must feature the NASC Quality Seal, among other things, to meet that standard.

Defendants argue that "[t]his assertion is the paradigm of nonactionable puffery." And had this been the only statement made, in isolation, perhaps that would be true. *See, e.g., Cytyc Corp. v. Neutromedical Systems, Inc.*, 12 F. Supp. 2d 296, 300-01 (S.D.N.Y. 1998) (advertisement describing product as "the new 'Gold Standard'" was nonactionable opinion or puffery). But the Court is not prepared to say definitively, at this time, that Defendants' "new standard" statement qualifies as an opinion. Instead, this statement may plausibly imply a false factual basis for the opinion by listing out criteria for the "new standard" – according to Nutramax, Defendants' website lists the following characteristics for this "new standard": (a) complete joint cycle support; (b) trusted by experts; (c) scientifically proven ingredients; (d) guaranteed results; (e) backed by science; and (f) NASC Quality Seal. The article is also linked to a full article regarding the "new standard" that can be accessed by veterinary professionals. The allegations plausibly state a Lanham Act violation. The motion to dismiss is denied as to this ground.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants' motion to dismiss (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART**.

(2) The motion is **GRANTED** to the extent the Court finds the complaint fails to establish personal jurisdiction over Lintbells Ltd. Nutramax will be granted leave to amend to cure the jurisdictional defects.

(3) The motion is further **GRANTED** to the extent that Nutramax has failed to state a claim for relief related to Defendants' use of the NASC Quality Seal. The claim is **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

(4) The motion is otherwise **DENIED**.

(5) Nutramax is directed to file an amended complaint on or before April 4, 2023.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of March, 2023.

        **TOM BARBER**
        **UNITED STATES DISTRICT JUDGE**